## ALBERT P. MILLER, RESPONDENT, *v.* THE NEW JERSEY STEAMBOAT COMPANY, APPELLANT.

*Common carrier — what constitutes a refusal to give accommodations to colored persons.*

In an action brought to recover the damages alleged to have resulted to the plaintiff from the refusal of the defendant, a common carrier, to furnish the plaintiff with accommodations on its steamboat, it appeared that the plaintiff, a colored minister, had applied to the defendant and obtained for himself and family berths upon the boat.  Subsequently he applied to the purser to exchange the berths for state-rooms, and, at the suggestion of the purser, saw the captain, with whom he had some conversation, after which he was informed by the purser " no other arrangement will be made."  The plaintiff thereafter stated to the purser that if he could get no state-room accommodations he would have to leave the boat and asked for his money, which was refunded to him.  It appeared upon the trial that the purser had given state-rooms, after the application made by the plaintiff, to other parties.

Upon the trial the court charged the jury: " I am inclined to think that the plaintiff has made out a cause of action of about this width and extent," to which the defendant excepted and requested the court to charge that if the plaintiff voluntarily left the boat, then no cause of action accrued to the plaintiff, which request was refused.

*Held*, that the court erred in such refusal, as the evidence did not show that there was any demand for a state-room, except in exchange for the berths which the plaintiff had already secured, which exchange the defendant was not bound to make.

*Semble*, that the case should have been submitted to the jury upon the question whether the refusal to exchange the berths for state-rooms was made on account of the plaintiff and his family being colored persons, and whether, for that reason, they were refused the privileges extended to the white passengers. (Per DANIELS, J.)

APPEAL by the defendant, the New Jersey Steamboat Company, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 1st day of March, 1890, in favor of the plaintiff; and also from an order, dated the 26th day of February, 1890, which denied defendant's motion for a new trial on the minutes of the court, and that the verdict be set aside, as against the weight of evidence and for excessive damages, after a trial at the New York Circuit before the court and a jury, at which a verdict was rendered by the jury in favor of the plaintiff for the sum of $500.

*W. P. Prentice*, for the appellant.

*H. L. Brant*, for the respondent.

VAN BRUNT, P. J. :

This action was brought to recover damages for the refusal by the defendant, a common carrier, to furnish the plaintiff accommodations on its steamboat.

The facts sworn to by the plaintiff are briefly these : The plaintiff, a colored minister, on the afternoon of August 10, 1887, applied to the defendant for passage for himself and family, consisting of his wife, two children and mother-in-law, from New York to Albany on defendant's boat the "Drew." And having ascertained at the purser's office what the tickets would cost, and desiring to save expense, and at the same time to be as comfortable as possible, he concluded to take berths, the wife, children and mother-in-law going to berths in the ladies' compartments and the plaintiff having a berth elsewhere. The plaintiff found that these berths would cost two dollars apiece, passage and everything, and accordingly paid for the berths and was immediately directed to the ladies' saloon, where he and his family were met by the stewardess, who conducted them to the ladies' cabin to some berths in the rear, where berths were assigned to his wife, mother-in-law and two children. They sat down their little bundles and were told by the stewardess they could not keep them there because there were others who were to come there and there was no room.

The plaintiff further testified that there was only a small passageway, and that they turned around and said : " These berths are so very small; we don't see how we can get along with two children and two women," whereupon his wife said, " Suppose, Albert, you go to the purser and get a state-room ; they only cost fifty cents more. Get two state-rooms." He then returned to the purser and said : " Well, Mr. Purser, I would like to exchange these berths ; we find them too small for comfort, inadequate for proper accommodation ; we want things as comfortable as we can ; we cannot make ourselves comfortable in those berths because we have children, and have no place to put little bundles for them or anything of the kind." The purser

said : " I cannot make the change without the consent of the captain." The plaintiff then sought out the captain and had some conversation with him, and the captain saw the purser and had some conversation with him, whereupon the plaintiff asked the purser " What is the pleasure of the captain, sir ? " His reply was " No other arrangement will be made." After waiting a little while the plaintiff sought out the purser again and said : " If you cannot do better than this, sir, and you have not had us to understand that you had no state-room accommodation, we will have to leave the boat and you will please give me my money. We would rather leave the boat than go up in this shape."

· The witness further testified that at the time he came back he saw the purser give state-rooms to other parties. The purser replied " I cannot do that without the consent of the captain." The plaintiff went after the captain again, who returned with him to the purser's office, and after a while his money was refunded to him. The plaintiff then said " I cannot help the color of my skin any more than you can the color of your eyes. It seems too mean that an American citizen shall be treated in this manner right in the city of New York." He had some further conversation in regard to the officers of the company and then left the boat. The plaintiff further testified that he had never been told by any of the officials that there were no state-rooms.

Upon the trial the learned court charged the jury : " I am inclined to think that the plaintiff has made out a cause of action of about this width and extent," to which the counsel for the defendant duly excepted ; and requested the court to charge that if the plaintiff voluntarily left the boat, there was no cause of action, which was refused.

We think that the learned court below fell into an error in supposing that the evidence showed that there was any demand for a state-room except in exchange for the berths which the plaintiff had already secured.

We have searched the case in vain to find any proof of this description. The demand upon the part of the plaintiff was to exchange the berths which had been assigned to him, and for which he had paid, for a state-room, which seemed to him, after examination, to be preferable and better suited to his wants. The evidence

shows that when the money paid for these berths was returned he left the boat, and made no demand after that time for a state-room.

We think, under these circumstances, no cause of action was made out. Whatever may have been the duty of the defendants toward the plaintiff they were not bound, after he had bought and paid for these berths, to exchange them for a state-room. They were under no such legal obligation, although they may have been under a legal obligation to furnish the plaintiff with a state-room the same as other travelers upon a demand made by him for the same and an offer to pay. But there is no offer to pay for a state-room except by the return of tickets which he had received for the berths, and possibly offering to pay the difference in price between the berths and the state-room. The plaintiff had bought the berths and the defendants were willing to comply with the contract which the payment of the plaintiff called upon them to fulfill. But the plaintiff was not satisfied with those accommodations and desired others. He demanded an exchange, and nothing else but an exchange. After having sold these berths to the plaintiff, and he having secured them, the defendants were not bound to rescind this contract and buy back the berths and run the risk of selling them over again. If, for his convenience, the plaintiff desired more ample accommodations, it was necessary that he should pay for them, and this he did not offer to do except upon the condition that the defendants would rescind the contract which they had already entered into with him by the sale of the tickets for the berths.

We think, for this reason, that there was a failure to make out a cause of action, and the learned justice erred in charging the jury that a cause of action had been made out in favor of the plaintiff. The judgment and order appealed from should be reversed and a new trial ordered, with costs to appellant to abide the event.

BRADY, J., concurred.

DANIELS, J. :

I concur, as the plaintiff failed to make out his right to maintain the action with such a degree of clearness as to justify the court in holding that he was entitled to recover. It was for the jury to decide whether the refusal to exchange the berths for state-rooms

was made on account of the plaintiff and his family being colored persons, and for that reason refusing them the privileges extended to the white passengers. The evidence was sufficient to submit that question to them, but not to sustain the court in ruling that a cause of action, as matter of law, had been proved.

Judgment reversed and new trial ordered, with costs to the appellant to abide event.